UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**BRADLEY LEIGHTON,**

    **Plaintiff**

v.                                       Case No.:

                                            **JURY TRIAL DEMANDED**

**HOMESITE INSURANCE COMPANY**
**OF THE MIDWEST,**

**Serve: Corporation Service Company**
       **100 Shockhoe Slip, 2nd Floor**
       **Richmond, Virginia 23219-4100**

and

**FUTURE VAN LINES, LLC,**
a Maryland limited liability corporation,

**Serve: SHLOME DOSTIKAM**
       **852 QUINCE ORCHARD DR**
       **STE T-2**
       **GAITHERSBURG MD 20878**

    **Defendants**

## COMPLAINT

COMES NOW the Plaintiff, Bradley Leighton ("Plaintiff" or "Mr. Leighton") and as and for his Complaint against the Defendants, Homesite Insurance Company of the Midwest ("Homesite") and Future Van Lines, LLC ("Future") states as follows:

1. Plaintiff is a natural person and a resident of Florida. At all times relevant up until September 4, 2019, Plaintiff resided at 2533 Kentucky Derby Drive, Virginia Beach, Virginia 23456 in a home which he owned (the "House").

2. Defendant Homesite is an insurance company incorporated in Wisconsin and licensed to do business in Virginia, with its principal office location being in Boston, Massachusetts. Homesite, *inter alia*, is a provider and underwriter of homeowners' insurance.

3. Defendant Future is a Maryland limited liability corporation with its principal place of business being Gaithersburg, Maryland and is engaged in the provision of moving and transport services. Upon information and belief, Future is not registered to do business in Virginia, although it regularly conducts business in Virginia.

4. Jurisdiction is appropriate because the parties have diversity of citizenship and the amount in controversy exceeds $75,000.00.

5. Venue is appropriate because the insurance policy at issue herein was issued to insure Plaintiff's previous home in Virginia Beach, Virginia and Future picked up Plaintiff's personal property at said house, within the geographic area encompassed by this District and Division.

6. On or about August 6, 2017, Plaintiff obtained homeowners' insurance coverage under policy number 34803893 on the House from Defendant, by and through Progressive Home Advantage. *See* Exhibit 1. Such insurance policy contained coverages for personal property as well as loss of use of the same. *Id.*

7. Plaintiff renewed Policy No. 34803893 on an annual basis at all times relevant. As of September 4, 2019, Policy No. 34803893 was in effect and covered both personal property and the loss of use thereof. As of September 4, 2019, Policy No. 34803893 had policy limits of $204,500.00 for personal property and $122,700.00 for the loss of use thereof. *See* Exhibit 2.

8. In August of 2019, Plaintiff was preparing to relocate from the House to the State of Washington. As a part of his planned move, Plaintiff engaged Future to pack his personal property and transport it to Washington.

9. On or about August 31, 2019, Plaintiff filed a Chapter 7 bankruptcy petition in the Bankruptcy Court for the Eastern District of Virginia (Case No. 19-73273-FJS). On that same day, Future arrived at the House and packed up the entirety of Plaintiff's personal property therein and removed it from the premises in a moving truck. At this time, Future attempted to double the previously agreed-upon fees for their services. Regardless, Future advised Plaintiff it would deliver his property to Washington in seven days.

10. On or about September 4, 2019, Future called Plaintiff and told him they were not going to deliver his property unless he sent additional cash payments to a post office box in Maryland.

11. Plaintiff then called the Virginia Beach Police Department and filed a larceny claim against Future; the officer working with Plaintiff on the matter advised him to file a property loss claim with Defendant, which Plaintiff then promptly did.

12. On or about September 12, 2019, Homesite sent a denial letter claiming a lack of coverage because Future had originally had permission to remove Plaintiff's personal property from the House.

13. On or about September 13, 2019, Plaintiff called Homesite, and disputed the claim denial based, in part, upon language in the policy providing coverage for personal property loss up to thirty days after being removed from the House. Defendant's representative then told Plaintiff that the initial stated reason for the denial was an "accident" and that the claim was actually being denied because Future had claimed it would deliver the property to Plaintiff.

14. On or about September 15, 2019, Future delivered to Plaintiff less than half of his property. In the course of the "delivery," Future attempted to force Plaintiff to sign a statement that his property had been delivered in good condition without allowing him to actually inspect the property and demanded Plaintiff pay it additional cash before they would open the truck and allow Plaintiff to inspect and take delivery. The property Future did deliver was severely damaged.

15. Plaintiff subsequently reopened his property loss claim, based on theft and damage to the property Future did deliver. The property Future delivered was placed into a storage unit. Homesite assigned a new adjuster to Plaintiff's reopened claim.

16. In late September of 2019, the Homesite adjuster originally working on Plaintiff's claim advised him that it was deemed a total loss, with valuation exceeding policy limits.

17. On or about November 12, 2019, Homesite sent an investigator known to Plaintiff as "David" to the storage unit to inspect the remaining property. David also interviewed Plaintiff and his minor daughters regarding the property and reviewed photos showing various items of property before the move.

18. On or about November 20, 2019, Ralph Rios, a supervisor working for Defendant, advised Plaintiff that Homesite had all it needed to settle the claim and were simply working on the final numbers. Mr. Rios advised Plaintiff that David had categorized the loss as total.

19. In December of 2019, Homesite assigned Plaintiff's claim to a third adjuster.

20. In January of 2020, Homesite issued its first check to Plaintiff, in the amount of $48,000.00. Despite having previously and consistently having corresponded with Plaintiff at his Washington address, Homesite sent the check to Plaintiff's old address at the House. Plaintiff received this check three weeks later and only after Homesite had advised him that it was going

4

to stop payment on that check due to it having been sent to the old address. When Plaintiff received the original check, he called the claims adjuster who advised him that there had not been a stop payment on the check, to which Plaintiff advised that he was going to deposit the check into his bank account. Despite having knowledge of Plaintiff's intentions, Homesite nonetheless cancelled the check after Plaintiff deposited it, causing him to suffer overdrafts.

21. In February of 2020, Homesite sent two further investigators to physically review Plaintiff's property in storage. The new investigators disposed of a damaged mattress and took photographs and serial numbers of unrepairable property in the storage unit. These investigators also deemed there to have been a total loss.

22. Subsequently, Homesite purportedly issued another check to Plaintiff, this time in the amount of $69,000.00. However, Homesite never actually sent or made this payment to Plaintiff. Homesite's adjuster advised Plaintiff that "everybody" had approved the payment but that it was stopped at the last minute by an anonymous vice president. Ultimately, this payment then showed as "cancelled" on Plaintiff's online claims portal.

23. In March of 2020, an individual purporting to be a lawyer for Homesite called Plaintiff to request him to submit to an oral examination under oath, to which Plaintiff agreed. Subsequently, Homesite sent Plaintiff an email regarding the examination indicating that the subject matter was going to be Plaintiff's bankruptcy proceeding. After consulting with his bankruptcy lawyer, Plaintiff advised Homesite that he would not be answering questions regarding the bankruptcy proceeding. Plaintiff had made Homesite aware of his bankruptcy proceeding at all times relevant.

24. Subsequently, Homesite reiterated that it still wanted to take a sworn statement from Plaintiff, to which Plaintiff agreed. Despite scheduling a time for a telephone call and

examination under oath, Homesite did not actually follow through with the examination and did not call Plaintiff.

25. The next morning, Homesite's adjuster advised Plaintiff that it was closing his claim due to an alleged "failure to cooperate." This was a false and pretextual excuse for closing Plaintiff's claim.

26. Plaintiff subsequently made a complaint to the Virginia State Corporation Commission's Bureau of Insurance regarding Homesite's handling and closure of his claim.

27. Following Plaintiff's complaint, Homesite advised him that it would reopen and continue to pay Plaintiff's claim if he participated in an examination under oath, to which Plaintiff again agreed.

28. Following the examination, Homesite again closed Plaintiff's claim and cancelled his coverage retroactive to August 31, 2019, for the stated reason of alleged fraud on the part of Plaintiff stemming from the differences in property valuation between the bankruptcy proceeding and the property claim.[1] This reason was false and pretextual and Homesite relied upon it in bad faith to avoid paying out further monies under its obligations and duties to Plaintiff under the insurance contract.

## Count I—Breach of Contract by Homesite

29. Plaintiff respectfully incorporates the allegations of Paragraphs One through 28 as if set out in full herein.

---

[1] The valuation discrepancy is due to differing standards applicable to a property claim and a bankruptcy petition. In the course and scope of his bankruptcy, which was filed prior to the date of property loss, Plaintiff used estimated actual cash value (or "yard sale" value), versus the replacement value standard applicable to most items of personal property under the instant insurance policy.

30. The insurance policy, attached hereto as Exhibit 1 and as renewed, constituted a binding contract between Plaintiff and Homesite under which, *inter alia*, Homesite had a duty to promptly adjust and indemnify Plaintiff for the loss of his personal property and his loss of use thereof, within policy limits.

31. Homesite breached such contract by, *inter alia*:

    a. failing and refusing to promptly and appropriately adjust Plaintiff's claim;

    b. acting in bad faith during the alleged investigation of Plaintiff's claim; and

    c. ultimately closing Plaintiff's claim and cancelling Plaintiff's coverage.

32. Plaintiff has suffered damages as a result of Homesite's breach. Furthermore, as such breach was in bad faith, Homesite is liable to Plaintiff for his attorney's fees and costs under Va. Code § 38.2-209(A).

### Count II—Breach of Duty of Good Faith and Fair Dealing by Homesite

33. Plaintiff respectfully incorporates the allegations of Paragraphs One through 28 as if set out in full herein.

34. Virginia law recognizes an implied duty of good faith and fair dealing governing first-party insurance agreements.

35. Plaintiff and Homesite had a first-party insurance agreement.

36. Homesite breached such duty of good faith and fair dealing by, *inter alia*:

    a. failing and refusing to promptly and appropriately adjust Plaintiff's claim;

    b. acting in bad faith during the alleged investigation of Plaintiff's claim; and

    c. ultimately closing Plaintiff's claim and cancelling Plaintiff's coverage.

37. Plaintiff has suffered damages as a result of Homesite's breach.

### Count III—Breach of Contract by Future

38. Plaintiff respectfully incorporates the allegations of Paragraphs One through 28 as if set out in full herein.

39. Plaintiff and Future entered into a binding agreement whereby Future was to pack and transport Plaintiff's personal property to Washington from Virginia.

40. Such agreement was supported by good and valuable consideration.

41. Future breached such agreement by, *inter alia*, failing to deliver over half of Plaintiff's personal belongings and severely damaging that which it did deliver.

42. Plaintiff has been damaged by such breach. Furthermore, as such breach was in bad faith, Homesite is liable to Plaintiff for his attorney's fees and costs under Va. Code § 38.2-209(A).

### Count IV—Negligence by Future

43. Plaintiff respectfully incorporates the allegations of Paragraphs One through 28 as if set out in full herein.

44. Future had a duty to Plaintiff to safely transport and deliver his personal property to him in Washington from Virginia.

45. Future breached such duty by, *inter alia*, failing to deliver over half of Plaintiff's personal belongings and severely damaging that which it did deliver.

46. Such breach has directly and proximately caused Plaintiff to be damaged.

### Count V—Conversion by Future

47. Plaintiff respectfully incorporates the allegations of Paragraphs One through 28 as if set out in full herein.

48. Future failed to deliver over half of Plaintiff's personal property to him after picking it up from his previous residence in Virginia.

49. Upon information and belief, Future and/or its agents, servants and employees kept and/or alienated Plaintiff's personal property for their own use and benefit.

50. Future accordingly deprived Plaintiff of possession of his personal property inconsistent with his rights.

### Count VI—Violation of the Virginia Consumer Protection Act by Future

51. Plaintiff respectfully incorporates the allegations of Paragraphs One through 28 as if set out in full herein.

52. Defendant is a "supplier" as defined by Va. Code § 59.1-198.

53. The work Defendant performed, or purported to perform, on the Plaintiffs Truck are "services" as defined by Va. Code § 59.1-198.

54. The services performed by Defendant constitutes a "consumer transaction" as defined by Va. Code § 59.1-198.

55. Defendant engaged in the following prohibited acts with regard to the consumer transaction described herein:

    a. misrepresenting that the goods or services were of a particular standard, quality or grade under Va. Code § 59.1-200 (A) (6);

    b. misrepresenting that repairs or services had been performed under Va. Code § 59.1-200(A)(10);

    c. using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with the consumer transaction under Va. Code § 59.1-200(A)(14);

    d. other violations of Va. Code § 59.1-200 (A).

56. To the extent Defendant's violation(s) were willful, Plaintiff is entitled to

an award of three times his actual damages, plus attorneys' fees and court costs under Va. Code § 59.1-204 (A).

57. Alternatively, Plaintiff is entitled to an award of his actual damages, plus attorneys' fees and court costs under Va. Code § 59.1-204 (A).

WHEREFORE, the Plaintiff, Bradley Leighton, by counsel, prays that this honorable Court enter judgment in his favor awarding to him actual damages, treble damages, nominal damages and punitive damages, plus his attorneys' fees and costs, as well as such other relief as may be just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL MATTERS SO TRIABLE**

**BRADLEY LEIGHTON**

**By:** _/s/Steven B. Wiley_

Steven B. Wiley (Va. State Bar No. 47531)
WILEY LAW OFFICES, PLLC
440 Monticello Ave., Suite 1817
Norfolk, Virginia 23510
(757) 955-8455
(757) 319-4089 facsimile
swiley@wileylawoffices.com